# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SH FRANCHISING, LLC d/b/a, | * |
| SENIOR HELPERS | * |
| v. | *   Civil Action No. CCB-18-2104 |
| NEWLANDS HOMECARE, LLC, *et al.* | * |

## MEMORANDUM

Pending before the court are plaintiff SH Franchising, LLC's motion for temporary restraining order and preliminary injunction and defendants' motion to dismiss. On November 16, 2018, the court held an evidentiary hearing on the motion for injunctive relief. For the reasons stated below, the court will deny the plaintiff's motion and provisionally will grant defendants' motion to dismiss in favor of mediation as explained below.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff is SH Franchising, LLC, a Delaware company that franchises non-medical in-home care businesses primarily for senior citizens experiencing Alzheimer's disease or dementia. SH Franchising's franchises generally provide staff who assist clients with bathing, dressing, eating, and personal hygiene. One of SH Franchising's methods of advertising its services and identifying potential clients involves visiting senior home facilities and other institutions likely to have high numbers of a franchise's target clients to provide free educational services regarding how to care for individuals experiencing dementia. SH Franchising's businesses profit only from the hiring of their staff, not from the educational and informational services they provide to assisted living facilities.

Defendants are Ms. Cheryl Doyle as well as TruBlu, LLC and Newlands Homecare, LLC ("Newlands"), Ms. Doyle's current and previous businesses, respectively. Ms. Doyle owned and operated Newlands, a Tulsa, Oklahoma-based franchise of SH Franchising, from June 16, 2009

until December 11, 2017, when she sold the franchise to Patrick Home Care, LLC. Ms. Doyle now owns and operates TruBlu.

On June 16, 2009, SH Franchising and Ms. Doyle executed a franchise agreement that contained, *inter alia*, a non-compete provision and a confidential information provision. The non-compete provision prohibited Ms. Doyle from owning, operating, or otherwise participating in a competitive business in the Tulsa area for two years after the termination of the franchise agreement. ECF 1-1 at pp. 44–45. The franchise agreement defined "competitive business" as

> (i) any home health care or in-home care agency or business that offers or provides non-medical care, companionship services, personal assistant services, or any other product or service that is similar to the services and products authorized to be offered or sold under the Marks and the System; or (ii) any business granting franchises or licenses to others to operate the type of business specified in subparagraph (i)

ECF 1-1 at p. 25. The franchise agreement defined "Marks" as SH Franchising's trademarks, service marks, and other commercial symbols, and defined "System" as the system SH franchising developed "relating to the establishment and operation of in-home care agencies that provide various in-home non-medical care and personal assistance services, primarily for hygiene assistance, light housekeeping, meal planning and preparation, running errands, transportation, medication reminders, and Alzheimer's and dementia care." ECF 1-1 at p. 10. The confidential information provision prohibited Ms. Doyle from using any confidential information, such as computer software and digital passwords for accounts acquired from SH Franchising, and required Ms. Doyle to return all copies of the operations manual, client list, and other confidential materials upon the termination of the franchise agreement. ECF 1-1 at p. 44. Pursuant to the sale of Newlands, on December 11, 2017, Ms. Doyle and SH Franchising executed an Agreement and Consent to Transfer ("transfer agreement"), selling Newlands to the owners of Patrick Home Care. The transfer agreement terminated the balance of the franchise agreement, maintaining only those

2

provisions intended to survive termination, specifically identifying the non-compete and confidential information provisions. ECF 1-2 at p. 3.

In May 2018, Ms. Doyle opened TruBlu in the Tulsa area. TruBlu provides dementia care training and consultation to senior care facilities and family members of individuals with dementia. TruBlu does not provide staff to care for individuals experiencing dementia, but instead provides informational services which educate senior care facilities or family members on how to care for such individuals. On July 10, 2018, SH Franchising initiated suit in this District, alleging breach of contract, misappropriation of trade secrets, and intentional interference with prospective advantage, and filed its motion for temporary restraining order and preliminary injunction.[1] On August 1, 2018, defendants filed their motion to dismiss. Both motions have been fully briefed.

## STANDARD OF REVIEW

To enter a preliminary injunction, a court must find that 1) the plaintiff is likely to succeed on the merits; 2) absent injunctive relief, the plaintiff is likely to suffer irreparable harm; 3) the balance of equities tips in the plaintiff's favor; and 4) the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (internal citations omitted); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009) (applying the *Winter* factors and ruling that the previous Fourth Circuit test for preliminary injunctions should no longer be applied), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. A "clear

---

[1] SH Franchising's sole member is SHF Acquisition Company, Inc., a Delaware corporation with its principal place of business in Baltimore County, Maryland. ECF 11-1 at ¶ 7. SH Franchising initiated suit in this District based upon the diversity of the parties and the franchising agreement's forum selection clause, under which the parties agreed that all judicial actions arising out of the agreement be litigated in the relevant state or federal court within the jurisdiction where SH Franchising maintained its principal place of business. ECF 1-1 at ¶ 17.7.

3

showing" is required for each factor. *Id.* at 22.

Preliminary injunctions are either prohibitory or mandatory. A prohibitory injunction "aim[s] to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). By contrast, a mandatory injunction alters the status quo, and is "in any circumstance disfavored." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994). The status quo is the "last uncontested status between the parties which preceded the controversy." *League of Women Voters of North Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Pashby*, 709 F.3d at 319).

A court may grant preliminary injunctive relief to preserve the status quo even if a dispute is otherwise subject to an arbitration clause. *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 (4th Cir. 2012) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1053–54 (4th Cir. 1985) and *Lever Bros. Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115, 123 (4th Cir. 1976)). This preserves the integrity of the arbitral process by ensuring that a future arbitral decision could return the parties to the status quo, and thereby also ensuring that any decision rendered by the arbitral body is not a "hollow formality." *Lever Bros.*, 554 F.2d at 123.

## ANALYSIS

In its motion, SH Franchising claimed that the court should impose a temporary restraining order and preliminary injunction to prohibit Ms. Doyle from continuing to operate TruBlu. Specifically, SH Franchising requested a prohibitory injunction, which would return the parties to the status quo after the transfer of Newlands to Patrick Home Care but prior to Ms. Doyle's establishment of TruBlu. The court will deny the motion because SH Franchising has failed to establish that it is likely to succeed on the merits of its complaint and because SH Franchising has

failed to prove that it likely will suffer irreparable harm if Ms. Doyle continues to operate TruBlu during the pendency of this case.[2] In light of the denial of the motion for preliminary injunction, the court also will grant the motion to dismiss so the parties may mediate.

### i. Likelihood of success on the merits

SH Franchising has not established that it is likely to succeed on the merits. SH Franchising claimed in its complaint that Ms. Doyle's creation and operation of TruBlu within two years after selling Newlands constituted a breach of contract and a violation of the Maryland Uniform Trade Secrets Act (MUTSA), Md. Code Ann., Comm. Law § 11-1201 *et seq.*, or intentional interference with prospective advantage in the alternative. SH Franchising argued that TruBlu qualified as a competitive business under the franchising agreement, and that Ms. Doyle, in creating and operating TruBlu, was misusing SH Franchising's trade secrets and other proprietary information. The court does not find SH Franchising's arguments persuasive.

"To state a claim for breach of contract under Maryland law, the complaint must '... allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F.Supp.3d 525, 540 (D. Md. 2014) (quoting *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655 (Md. 2010) (internal citation and emphasis omitted)). The parties did not dispute that Ms. Doyle owed SH Franchising the contractual obligation of not owning or operating a competitive business for the two years after she sold Newlands, nor did the parties disagree regarding the general enforceability of the non-compete provision. *See Ledo Pizza System, Inc. v.*

---

[2] Based upon the court's conclusion that SH Franchising cannot show either a high likelihood of success or irreparable harm, the court need not reach the balance of equities or the public interest factors at this time. The record suggests, however, that Ms. Doyle is more likely to suffer economic harm than is SH Franchising if the court were to enter a preliminary injunction. *See, e.g.*, Transcript of November 16, 2018, Evidentiary Hearing at pp. 85–87.

5

*Singh*, F. Supp. 2d 632, 641–42 (D. Md. 2013) (applying the body of law surrounding restrictive covenants on employment to the franchisee-franchisor relationship). Instead, the parties' dispute centered on whether Ms. Doyle's creation and operation of TruBlu in fact constituted a violation of the non-compete and confidentiality provisions, a dispute that rested largely on whether TruBlu qualified as a "competitive business" under the agreements. *See id.* at 641 ("If the scope of [the non-compete] covenant on its face is reasonable, then the court will examine the facts and circumstances of the individual case." (internal citation omitted)).

The franchising agreement provided two definitions of competitive business. First, it defined competitive business as one that "offers or provides non-medical care, companionship services, [or] personal assistant services." ECF 1-1 at p. 25. SH Franchising argued that TruBlu's fee-based provision of educational services constituted a competitive business because SH Franchising provided the same services for free in order to promote its in-home care agency. But TruBlu does not offer non-medical care, companionship, or personal assistant services, Tr. at pp. 91–92, and has no mechanism from which to profit off such services, nor is it licensed to provide them. Tr. at pp. 86, 88. The fact that SH Franchising may offer similar services without charge in order to attract clients to pay for its staff does not bring Ms. Doyle or TruBlu within the definition stated in the contract.

In support of its contention that TruBlu is a competitive business, SH Franchising also argued that Ms. Doyle continued to participate in the Gems® program, an educational and training program created by Ms. Teepa Snow which issues certifications for dementia professionals. Ms. Doyle first participated in a Gems® program while she operated Newlands. Tr. at pp. 106–08. SH Franchising claimed this demonstrated that TruBlu constituted a competitive business and that Ms. Doyle inappropriately used proprietary materials. Notably, Mr. Patrick acknowledged that,

while Gems® is integral to his franchise operations, it is proprietary to Ms. Snow, not SH Franchising. Tr. at p. 22; *see also* Tr. at pp. 93–94. Additionally, Ms. Doyle first obtained a Gems® certification after selling Newlands in order to operate TruBlu, Tr. at pp. 95–96. It was only after the transfer that a Patrick Home Care employee obtained the same certification. Tr. at pp. 54–55. Thus, it is evident that Ms. Doyle's obtaining and using a Gems® certification from Teepa Snow does not show that TruBlu qualifies as a competitive business under the agreement's first definition, not does it show inappropriate use of confidential information.[3]

The franchising agreement's second definition of competitive business requires additional analysis. It includes businesses which provide any "product or service that is *similar* to the services and products authorized to be offered or sold under the Marks and the System[,]" ECF 1-1 at p. 25 (emphasis added), with the agreement defining the "System" as a system "relating to the establishment and operation of in-home care agencies that provide various in-home non-medical care and personal assistance services," ECF 1-1 at p. 10. By incorporating the System definition, the franchising agreement also prohibited former franchise owners from working for businesses which provide the same or similar products and services related to the establishment and operation of in-home care agencies. Assuming without deciding that Ms. Doyle's business of providing educational services for a fee could be considered "similar" to SH Franchising's business, such an interpretation would render the covenant overbroad and unenforceable. Restrictive covenants on employment may not be used to bar individuals from entire fields of work simply to limit the employer's competition. *See, e.g., RLM Commc'ns, Inc. v. Tuschen*, 831 F.3d 190, 196–97 (4th Cir. 2016) (finding that a non-compete provision restricting a former employee from working

---

[3] SH Franchising may assert that Senior Gems®, their company's version of the Gems® program, is proprietary to SH Franchising. Tr. at p. 99. Even assuming this is correct, SH Franchising did not provide any evidence that Ms. Doyle has used information exclusive to the Senior Gems® program since transferring the franchise, and Ms. Doyle does not maintain any Senior Gems® certifications.

7

directly with similar businesses was overbroad and thereby unenforceable because the restriction was not tethered to actual work the employee had performed for the employer); *Seneca One Finance, Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 461–62 (D. Md. 2016) (finding a non-compete provision unenforceable in part because it was "far wider in scope than is reasonably necessary to protect the goodwill" that the former employee may have created for the employer). Similarly, a confidential information agreement may not require individuals to act as if they have erased their memory. *See Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 404 (D. Md. 2015) (information former employees retain mentally cannot serve as basis of a misappropriation claim, as doing so would require former employees to act as if they had undergone "a prefrontal lobotomy" (internal citation and quotation marks omitted)). Instead, in Maryland, restrictive covenants on employment should be tailored narrowly to shield an employer's legally protected interests.

In this case, SH Franchising's articulated reason for attempting to restrict Ms. Doyle's new business appears to stem from an unprotected interest in limiting competition. Throughout these proceedings, SH Franchising has claimed that it initiated suit because TruBlu's continued operation would result in decreased profits for Patrick Home Care. *See, e.g.*, ECF 33 at p. 7. Given that SH Franchising has provided no evidence that Ms. Doyle attempted to redirect former Newlands customers to TruBlu (and, in fact, it appears that TruBlu *referred* several potential clients to Patrick Home Care, Tr. at pp. 101–02) or that Ms. Doyle attempted to use SH Franchising materials to her benefit after the transfer, SH Franchising's claim that TruBlu should be prohibited from operating simply because it may negatively affect Patrick Home Care's profits reflects more a fear of competition than protection of a valid legal interest.

In its supplemental brief for the motion for preliminary injunction, SH Franchising alleged that TruBlu's service of preparing care plans and providing information on how to care for

individuals experiencing dementia could lead individuals or their families to conclude that they do not require the use of an in-home care agency. ECF 33 at p. 5. As a result, SH Franchising argued that TruBlu should be prohibited from operating because its services may negate the need for some prospective clients to hire SH Franchising. First, SH Franchising provided no evidence to support this allegation, relying instead on conjecture. Second, TruBlu's potential disruption of the franchise's previous flow of clients by providing an intermediary service at a fee which SH Franchising provided for free cannot serve as the basis for granting the request for a preliminary injunction. *See Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771, 775 (D. Md. 2015) (noting that restrictive covenants on employment are overbroad and thereby unenforceable when they proscribe engaging in any activity which may adversely affect the company and appear to be designed to prevent any work with a direct or indirect competitor (internal quotation marks omitted)) (citing *Deutsche Post Global Mail, Ltd. v. Conrad*, 116 Fed. App'x 435, 438 (4th Cir. 2004)).

In sum, SH Franchising has not proven it is likely to establish that Ms. Doyle is operating a competitive business as defined in the franchising agreement, nor has it established that its "similar products or services" restriction likely is enforceable, and therefore SH Franchising has not proven it is likely to succeed on its claim that Ms. Doyle, via TruBlu, breached the non-compete provisions of the franchising agreement.[4]

---

[4] SH Franchising's other two claims, misappropriation of trade secrets and intentional interference with prospective advantage, similarly are unlikely to succeed. Both claims rely upon SH Franchising's assertion that Ms. Doyle retained confidential information and trade secrets after transferring the franchise to Patrick Home Care. During the November 16 hearing, Ms. Doyle credibly testified that she returned all client lists, operations manuals, and other trade secret documents upon the transfer of her franchise to Patrick Home Care, Tr. at pp. 102–03, and, as noted *supra*, the Gems® program is not proprietary to SH Franchising. SH Franchising offered no evidence to contradict Ms. Doyle's testimony.

9

## ii. Irreparable harm

SH Franchising has not provided sufficient evidence to establish that, absent a preliminary injunction, the continued existence and operation of TruBlu by Ms. Doyle would cause irreparable harm to SH Franchising's business interests. In its motion and supplemental briefing, SH Franchising claimed that TruBlu's continued operation would reduce irrevocably Patrick Home Care's client base and ability to market itself to potential clients, creating a disastrous effect on Patrick Home Care's future profits. During the November 16, 2018, hearing, Mr. Reid Patrick, owner of Patrick Home Care, testified regarding the effect of TruBlu on his franchise's operations. Mr. Patrick testified to noticeably diminished interest in Patrick Home Care at an event in November 2018 that historically generated significant business for Newlands. Tr. at pp. 23–26. Mr. Patrick attributed this diminished interest to TruBlu's establishment in the months leading up to the event, and further claimed that he lost approximately $4,000 on the event that in previous years was profitable for Newlands. Tr. at p. 42. SH Franchising also introduced evidence regarding Patrick Home Care's 2018 earnings, however, which demonstrated that Patrick Home Care consistently earned more than Newlands did during the same periods in 2017. ECF 32-11 at p. 2; Tr. at p. 32. At no time from January 2018 through October 2018 did Patrick Home Care fail to exceed the sales Newlands enjoyed during the same period in 2017.[5] Tr. at pp. 59–61.

In resolving whether SH Franchising has satisfied the irreparable harm factor, "the court must determine whether (1) the Plaintiffs are suffering actual and imminent harm, not just a mere possibility, and (2) whether that harm is truly irreparable, or whether it can be remedied at a later time with money damages." *BAE Sys. Tech. Solution & Services, Inc. v. Republic of South Korea's Def. Acquisition Program Admin.*, 195 F. Supp. 3d 776, 801 (D. Md. 2016) (internal citations

---

[5] Mr. Patrick testified that his sales for the first two weeks of November 2018 were less than those for Newlands in those same weeks of 2017. Tr. at pp. 36–37.

omitted). "[I]rreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Id.* (quoting *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994), *abrogated on other grounds*, *Winter*, 555 U.S. 7) (internal quotation marks omitted).

Based on Patrick Home Care's consistently higher profits in 2018 compared to Newlands's profits during the same periods in 2017 and its failure to show the loss of any customers to TruBlu, the court concludes that SH Franchising is not suffering actual and imminent harm and instead has shown only the mere possibility of future harm. While SH Franchising noted that Patrick Home Care's profits dipped around the time that TruBlu initiated operations and at times while TruBlu was participating in the market, the decreases did not prevent Patrick Home Care from exceeding Newland's 2017 profits for every two-week period in most of 2018, nor did SH Franchising present evidence of a single former or potential Patrick Home Care customer defecting to TruBlu.[6] Tr. at pp. 63–64, 76. Accordingly, the court finds that SH Franchising has not established that it is likely to suffer irreparable harm absent a preliminary injunction.

### iii. Motion to Dismiss

In their motion to dismiss, defendants claimed that the court should dismiss this case because SH Franchising failed to participate in mediation prior to filing suit. The franchising agreement provided that, prior to initiating a suit in court, the parties must participate in non-binding mediation, unless either 1) the dispute was "based solely on demands for money owed," or 2) the party was seeking "injunctive relief against threatened conduct that will cause it loss or damages." ECF 1-1 at p. 49. In its opposition, SH Franchising acknowledged the mediation

---

[6] Indeed, TruBlu earned virtually no income throughout 2018. Tr. at pp. 85–87.

provision but claimed that it was entitled to proceed without mediation given its request for emergency relief.

By requiring the parties to mediate before filing suit, the franchising agreement's mediation provision served as a condition precedent to litigation. "[F]ailure to satisfy a condition precedent is ordinarily considered an affirmative defense[,]" and an affirmative defense typically is not considered at the motion to dismiss stage "unless the facts necessary to establish it are available on the face of the pleadings." *United States for the use & benefit of Tusco, Inc. v. Clark Constr. Grp., LLC*, 235 F. Supp. 3d 745, 753 (D. Md. 2016) (internal citations omitted). Here, the parties' pleadings adequately establish the factual basis for the court to conclude that the condition precedent has not been satisfied, as there is no dispute that the parties have not participated in mediation, and because the exception permitting SH Franchising to pursue injunctive relief no longer applies.[7]

Accordingly, the court intends to dismiss this case so that the parties may pursue mediation.[8] Counsel will be provided a period of fourteen days, however, to show any cause why dismissal should not be granted.[9] They also may advise the court if they would prefer to pursue mediation with a magistrate judge in this District.

A separate order follows.

---

[7] In its supplemental briefing, SH Franchising claimed that the court's failure to enter a preliminary injunction would lead Ms. Doyle to conclude that she may violate the non-compete and confidential information provisions with impunity. The court finds no reason to accept this claim. Nothing in the record suggests that Ms. Doyle would be inclined to take such action. To the contrary, Ms. Doyle testified during the November 16 hearing regarding her awareness and understanding of the limitations imposed upon her by both provisions and her efforts to operate within those limits, supported by her testimony regarding her decision not to accept an offer of employment from a Patrick Home Care competitor. Tr. at pp 79–83. The court credits her testimony.

[8] The court does not need to address the defendants' other arguments supporting their motion to dismiss at this time.

[9] Counsel should not repeat arguments they have already made.

1/28/19
Date

*Catherine C. Blake*
Catherine C. Blake
United States District Judge